FILED
2018 Dec-17 PM 11:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION**

| | | |
|---|---|---|
| **JERRY BONNER, an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:18-CV-00440-ACA** |
| | ) | |
| **SPECIALIZED LOAN SERVICING, LLC, a Corporation; FV-I, INC. IN TRUST FOR MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, et. al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFEDNATS' MOTION FOR SUMMARY JUDGMENT**

---

COMES NOW the Plaintiff, Jerry Bonner, by and through counsel and hereby responds to the Motion for Summary Judgment filed by Defendants FV-1 and Specialized Loan Servicing, LLC ("SLS"). Defendants' motion is due to be denied pursuant to Rule 56(d) as spelled out in Plaintiff's motion filed on this date (Doc 22). Additionally, Defendants' motion is due to be denied as issues of disputed fact exist to be decided by the trier of fact making summary judgment in appropriate. In support of this response, Plaintiff says as follows:

**FACTS**

1. On August 14, 2003, Plaintiff, Jerry Bonner, acquired the subject Property via that certain Warranty Deed. (See Ex. 2 to Def's Mtn. [Doc. 16-2]

2. On or about April 1, 2004, Plaintiff and Rebecca A. Bonner borrowed funds in the amount of $172,850, with a credit limit available in the amount of

3. $232,000. Bonner executed an Alabama Agreement and Disclosure (the "**Note**") in favor of Morgan Stanley Dean Witter Credit Corporation. Bonner also executed a Mortgage in the amount of $232,000 to Morgan Stanley Dean Whitter Credit Corporation. (See Ex. 1 to Def's Mtn. [Doc. 16-1].

4. After having financial difficulties, Bonner filed Chapter 7 Bankruptcy in the United States Bankruptcy Court, Northern District of Alabama, Case 09-43746. Among other debts listed in the filing, Plaintiff listed the subject Property as an asset of the bankruptcy estate and Morgan Stanley as a secured creditor. (See Ex. 3 to Def's Mtn. [Doc. 16-2].

5. On April 7, 2010, the Bankruptcy Court discharged Plaintiff's debts, including the debt for the loan on the subject property Bonner had owed Morgan Stanley Dean Witter Credit Corporation. (See Ex. 4 to Def's Mtn. [Doc. 16-2].

6. On June 1, 2014, after the debt was clearly in default and more than four years after Bonner had been discharged from the bankruptcy, defendant Specialized Loan Servicing, LLC began servicing Bonner's discharged loan. (Exhibit "A").

7. Also several years after the bankruptcy, on May 23, 2016 the alleged "Corporate Assignment of Mortgage" to FV-1 Inc., in Trust for Morgan Stanley Mortgage Capital Holdings LLC was recorded. The assigned supposedly occurred more than twelve years before on April 14, 2004. (Exhibit "B")

8. In November 2014 Bonner submitted a loss mitigation packet seeking a HAMP modification. (Exhibit "E")

9. According to Bonner, he was never actually considered for a HAMP modification, but was in fact informed it was their way of obtaining a new reduced loan in an effort to settle with him. (Exhibit "F," Interrogatory Resp. #12).

10. Bonner was told to make three monthly trial payments, which he did. However, instead of being offered a HAMP modification, he was apparently turned down and instead offered a 40 year loan, which would pay off when he was 119 years old resulting in payments of over $396,000. (Exhibit "F," Interrogatory Resp. #24).

11. On October 27, 2015 SLS sent Bonner a letter titled, "Notice of Default and Notice of Intent to Foreclose." The letter asserted that he had failed to make payments due under the note from March 2015 through the date of the letter; the letter sought all past due payments in order to cure the default; noted the amount owed to cure the default was $6,803,92; gave him thirty-three (33) days to cure the default on the discharged debt; noted that the communication was from a Debt Collector and was an attempt to collect a debt; noted that the total amount of the debt was $230,250.20. (Exhibit "G")

12. The October 27, 2015, then goes on to conflict the above demand telling Bonner "if you are a consumer in bankruptcy" this is not a demand for payment, a seemingly confusing statement, as SLS would have known Bonner was in bankruptcy, yet it had just asserted that a "note" still existed and that it required monthly payments. (Exhibit "G").

13. On April 6, 2017, through its lawyer's Defendants SLS acting as "servicing agent" for FV-1 and FV-1 attempted to collect the alleged debt when they wrote Bonner. The collection efforts are as follows:

- FV-1, Inc. has elected to, and does hereby, declare the entire indebtedness secured by your mortgage to be immediately due and payable and has instructed us to begin foreclosure proceedings on the above-reference property.
- The amount of the indebtedness owed to FV-1, Inc. as of the date hereof is approximately $252,866.36 plus accrued interest and this firm's fees and expenses.
- This is an attempt to collect a debt, and any information obtained will be used for that purpose.
- Should you wish to have the foreclosure proceedings discontinued, all sums due under your loan with FV-1, Inc. must be paid in certified funds and delivered to this office prior to the scheduled foreclosure sale.

(Exhibit "C")

14. Nine months later, on January 19, 2018, Defendants again sent Bonner an almost identical letter seeking payments, except the amount claimed had increased to $259,258.12. (Exhibit "D")

**<u>ARGUMENT</u>**

### A. Defendants' Argument that Plaintiff's RESPA claims, Claims for Violation of the Discharge Order, Claim that Foreclosure is Not Allowable, Claim of Negligence and Wantonness, and Invasion of Privacy[1]

Defendants' arguments as to why these claims fail is not entirely clear. Defendants fail to identify the elements it asserts apply to each of these claims and subsequently fails to show which element of each claim Plaintiff allegedly cannot prove to survive summary Judgment. Thus Defendants have failed to meet their burden that no genuine issue of material fact exists entitling them to judgment as a matter of law.[2]

### B. Plaintiff's RESPA claims Survive Summary Judgment

RESPA and the corresponding regulations require mortgage servicers to meet certain requirements in offering and reviewing loss mitigation options to a borrower. A loss mitigation application is simply a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage. *12 C.F.R.* § 1024.31. The servicer must "exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1).

[1] As Defendants stopped the foreclosure and have not proceeded with it at this time, Plaintiff withdraws his claim that the foreclosure is not allowable.

[2] In addition to the reasons set forth in Plaintiff's Rule 56(d) motion previously filed seeking a delay of the court's hearing of Defendant's summary judgment motion based on the additionally required evidence, Defendants' confusing bald assertions that Plaintiff's claims are due to be dismissed is another reason this court should delay the summary judgment.

When evaluating a facially complete application, the servicer may determine that it needs additional or corrected information from the borrower to complete its review of the application. 12 C.F.R. § 1024.41(c)(2)(iv). The servicer may "request the missing information or corrected documents" from the borrower and must give the borrower a "reasonable opportunity" to comply with the servicer's supplemental request. *Id*. Once the borrower submits the requested materials or if the servicer initially determines that the application is complete, then the application is considered "facially complete" for purposes of § 1024.41. *Id*. § 1024.41(c)(2)(iv).

The servicer then reviews the application to determine whether the borrower is eligible for any loss mitigation options. *Id*. § 1024.41(c)(1)(i). When reviewing an application, the servicer must consider all loss mitigation options available to the borrower and notify the borrower in writing what options, if any, it will offer. *Id*. § 1024.41(c)(1)(i)-(ii).[5] The regulations require the servicer to complete its review within 30 days of receiving the borrower's complete application. *Id*. § 1024.41(c)(1).

At this stage, Plaintiff does not know which loss mitigation options were available to Plaintiff, which loss mitigation options he should have been considered for and whether the basis for his rejection, supposedly not providing documents is in fact the real reason. Defendants have asserted that Plaintiff failed to submit certain

[5] In general, until the servicer notifies the borrower that she is ineligible for any loss mitigation option or the borrower rejects all loss mitigation options offered by the servicer, the servicer is prohibited from completing the foreclosure sale. 12 C.F.R. § 1024.41(g).

requested documents.

In fact, Plaintiff had previously been offered a trial modification, which he completed, but was then offered a loan modification that included unreasonable terms requiring him to agree to a 40 year loan he would have only paid once he turned 119 year old, required him to pay back significantly more than he owed and required a $70,000 balloon payment at the end.

Defendants have failed to establish that they are entitled to summary judgment as to Plaintiff's RESPA claims based on their broad assertions. Additionally, Defendants have not shown that they offered Plaintiff all available loss mitigation options nor allowed Plaintiff to cross examine them as to other possible reasons for which they might have denied Plaintiff's request for loss mitigation.

**C. Plaintiff's FDCPA Claims Survive Summary Judgment**

The only basis put forth by defendants seeking summary judgment on Plaintiff's FDCPA claims is that defendants assert that they are not "debt collectors" as that term is defined under the FDCPA. Consequently, since defendants do not move on any other grounds, they have waived any such arguments. Therefore, Plaintiff will only address whether defendants are "debt collectors" under the FDCPA.

The 11th Circuit, finding that an entity can engage in debt collection activity even while enforcing a security interest through foreclosure noted, "[a]

communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest. A "debt" is still a "debt" even if it is secured. *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012).

Under the FDCPA, "a 'debt collector' is

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.
>
> 15 U.S.C. § 1692a(6) (emphasis added). So a party can qualify as a "debt collector" by either using an "instrumentality of interstate commerce or the mails" in operating a business that has the principal purpose of collecting debts or by "regularly" attempting to collect debts."

*Reese*, 678 F.3d at 1218.

As noted above, collection activity by a servicer can be both enforcement of a security interest and debt collection activity at the same time. *Reese*, at 1218. The letters from SLS and its lawyers repeatedly seek payment from Bonner, informing him that he is past due on the payments under the "note," even though the note no longer exists and demanding payment in order to stop the foreclosure.

As a mortgage servicer, SLS, by definition collects the debt of others, those for whom it is servicing the loan. However, to the extend Defendants would argue this is not their primary business or they do not regularly collect the debt of others,

they are only able to do so because they have denied Plaintiff the necessary depositions to flesh this information out.

Additionally, courts note,

> when the loan is in default at the time the loan servicer begins servicing the loan, courts have concluded that a loan servicer may be a debt collector. *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 366 (6th Cir. 2012); *Allen v. Bank of Am. Corp.,* No. CCB-11-33, 2011 U.S. Dist. LEXIS 92383, 2011 WL 3654451, at *7 n.9 (D. Md. Aug. 18, 2011) (concluding that because BAC serviced loans that were in default at the time they began servicing them, BAC was not excluded from the definition of debt collector under the FDCPA); *Weigel v. BAC Home Loans Servicing, LP*, No. 09-CV-02546-WDM-KMT, 2011 U.S. Dist. LEXIS 37413, 2011 WL 1135319, at *4 (D. Colo. Mar. 29, 2011) (same).

*Shaw v. OneWest Bank, FSB*, No. 1:14-CV-2329-MHC-LTW, 2015 U.S. Dist. LEXIS 180337, at *24 (N.D. Ga. June 29, 2015)

Given that both SLS and FV-1 received these loans after the bankruptcy and that no new loan had been established at the time SLS began servicing the loan and at the time FV-1 was transferred the loan (the time may be disputed as the alleged transfer did not surface until it was recorded some 12 yeas after it allegedly occurred) a disputed issue of fact exists as to this element.

Defendants sought to collect the debt.

Specifically, the October 27, 2015 letter SLS sent Bonner a letter titled, "Notice of Default and Notice of Intent to Foreclose." The letter asserted that he had failed to make payments due under the note from March 2015 through the date of the letter; the letter sought all past due payments in order to cure the default; noted

the amount owed to cure the default was $6,803,92; gave him thirty-three (33) days to cure the default on the discharged debt; noted that the communication was from a Debt Collector and was an attempt to collect a debt; noted that the total amount of the debt was $230,250.20. (Exhibit "G")

The letter sent on April 6, 2017, through its lawyer's Defendants SLS acting as "servicing agent" for FV-1 and FV-1 attempted to collect the alleged debt when they wrote Bonner. The collection efforts are as follows:

- FV-1, Inc. has elected to, and does hereby, declare the entire indebtedness secured by your mortgage to be immediately due and payable and has instructed us to begin foreclosure proceedings on the above-reference property.
- The amount of the indebtedness owed to FV-1, Inc. as of the date hereof is approximately $252,866.36 plus accrued interest and this firm's fees and expenses.
- This is an attempt to collect a debt, and any information obtained will be used for that purpose.
- Should you wish to have the foreclosure proceedings discontinued, all sums due under your loan with FV-1, Inc. must be paid in certified funds and delivered to this office prior to the scheduled foreclosure sale.

(Exhibit "C").

All of these actions constitute debt collection under the FDCPA. Thus, Defendants' motion for summary judgment as to these claims should be denied.

### D. Plaintiff's Breach of Contract Claim is due to Survive Summary Judgment

The sole basis for Defendants' claim is that plaintiff breached the contract,

therefore he cannot enforce the contract. However, courts have held that in the context of a mortgage contract, where the servicer continues to forward under the terms of the mortgage, Plaintiff's breach will not predclude him from mainating a braech of contract claim. *See, e.g., Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1298-99 (C.D. Cal. 2015) (denying motion to dismiss Plaintiffs' breach of contract claim for violations of a hazard insurance agreements when Defendants alleged that Plaintiffs failed to fully perform under the contract); *Persaud v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 120307, 2014 WL 4260853, at *8 (S.D. Fla. Aug. 28, 2014) ("Contrary to Defendants' argument, the fact Plaintiff initially breached the Mortgage when his insurance policy lapsed does not preclude his breach of contract claim. When a lender opts to continue a mortgage by force-placing insurance after a borrower's coverage lapses, the lender 'waive[s] the right to rely upon [plaintiff's] failure to maintain insurance as a defense to [his] contract claims.'").

Thus, defendants motion should be denied on these grounds.

## Conclusion

Defendants motion for summary judgment should be denied as material issues of disputed fact exist precluding the entry of summary judgment. Further, to the extend Plaintiff has not been able to adequately respond to Defendants' motion this court should delay ruling and allow the parties time to complete discovery for the

reason set forth in Plaintiff's Rule 56(d) Response.

Respectfully submitted,

*/s/ M. Stan Herring*

John G. Watts, Esq.
M. Stan Herring, Esq.
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 879-2447
john@wattsherring.com
stan@wattsherring.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this **17th day of December, 2018**, the above has been served via this court's cm/ecf filing and service system, which will electronically serve a copy of the foregoing on counsel of record as follows:

GEORGE C. GASTON (8841-O60G)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
63 South Royal Street, Suite 302
Mobile, Alabama 36602
Telephone: (251) 438-7850
Facsimile: (251) 438-7875
ggaston@gallowaylawfirm.com

*Attorney for Defendants*

***/s/ M. Stan Herring***
OF COUNSEL